IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**DAVID BUNNELL**,                     §
                                       §
                  Plaintiff,           §
                                       §
v.                                     §        Civil Action No. **3:12-CV-03740-L**
                                       §
**BRYAN NETSCH, et al.**,              §
                                       §
                  Defendants.          §

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion to Dismiss, filed November 21, 2012; Plaintiff's

Response to Defendants' Motion to Dismiss, filed December 14, 2012; and Defendants' Reply in

Support of Motion to Dismiss, filed January 4, 2013.  After careful consideration of the motion,

response, reply, record, and applicable law, the court **denies without prejudice** Defendants' Motion

to Dismiss.

## I.      Background

Plaintiff David Bunnell ("Plaintiff" or "Bunnell") brought this action against Defendants

Bryan Netsch ("Netsch"); Intense Printing, Inc. ("Intense"); PRISM Promotional Services, Inc.

("PPS"); Interactive Printing Inks and Coatings, Inc. ("Interactive"); and Graphics Intellectual

Property Management Group, Inc. ("Graphics") (collectively, "Defendants") on September 14, 2012.

In this opinion, the court refers to PPS, Interactive, and Graphics as "Intense affiliates."  Plaintiff

asserted claims for: (1) violation of the Securities Act of 1933, 15 U.S.C. § 77a, *et seq.* ("Securities

Act"); (2) violation of the Securities and Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* ("Exchange

**Memorandum Opinion and Order - Page 1**

Act"); (3) breach of contract; (4) performance of guaranty; and (5) fraud.  Plaintiff also seeks exemplary damages, attorney's fees, and costs of court.

On October 19, 2012, Bunnell filed his First Amended Original Complaint to correct the names of the Defendants.  On November 21, 2012, Defendants moved for dismissal of Plaintiff's First Amended Original Complaint for failure to state a claim, or, in the alternative, convert the Motion to Dismiss to a motion for summary judgment, or, in the alternative, order Plaintiff to make a more definite statement.  Specifically, Defendants seek dismissal of Plaintiff's claims on the basis that: (1) the Second Amended Original Complaint fails to allege any relationship between the transaction at issue and interstate commerce; (2) the claims asserted are barred by the applicable statutes of repose and limitations, and the statute of frauds; and (3) Bunnell fails to plead fraud with the required particularity.  On December 14, 2012, Plaintiff filed a response in which he requested the court grant him leave to file his second amended complaint, which he attached to his response. On January 4, 2013, Defendants filed a Reply, contending that the proposed Second Amended Original Complaint failed to address the deficiencies raised in the Motion to Dismiss, and, accordingly, should also be dismissed for failure to state a claim.  On June 6, 2013, the court granted Plaintiff leave to file his Second Amended Original Complaint, and Bunnell filed it on June 7, 2013. For the purposes of Defendants' Motion to Dismiss, Plaintiff's Second Amended Original Complaint (the "Complaint") is the "live" or operative pleading.[1]

In 1998, Bunnell began working for a print broker company owned by Netsch called Prism Graphics, Inc. ("Prism"), pursuant to a 4-year Employment Confidentiality and Non-Compete

---

[1] The Second Amended Original Complaint omits the guaranty claim against Netsch.  As such, Defendants no longer move for dismissal of this claim on the basis that it violates the statute of frauds.

**Memorandum Opinion and Order - Page 2**

Agreement (the "Agreement").  Pl.'s Second Am. Orig. Compl. ¶ 5. The Agreement provided that Bunnell was an employee who would receive a salary of $200,000 per year plus a potential to earn "performance units" which would be related to the "appreciation in the value of the common stock of the employer."  *Id.*   The performance units were to be based upon the greater of the gross operating profit contributed by Bunnell or the amount Bunnell's gross operating profit bears to the employer's total gross operating profit.  *Id.*  The performance bonus was calculated on an annual basis and paid at the end of each year as part of Bunnell's compensation.  *Id.*  The bonuses earned by Bunnell were to pay for "phantom stock" in Prism.  *Id.*  From January 1999 until 2007, Netsch took approximately $264,000 out of Bunnell's commission checks for the purchase of phantom stock in Prism.  *Id.* ¶ 7.  The parties also agreed to a buy-out provision whereby Netsch personally agreed to buy out Bunnell's "equity" interest following a demand therefore.  *Id.* ¶ 6.  The Agreement terminated by its terms on December 31, 2003.  *Id.* ¶ 5.  The parties, however, continued to treat the contract as being in effect after December 31, 2003.  *Id.*  Prism was not under any obligation to continue Bunnell's employment other than to pay the Performance Bonus.  *Id.*

In 2007, a company called Giddy Up, Inc. ("Giddy Up") obtained a jury verdict in federal court against Prism, but not against Netsch individually, for engaging in fraud and various other improper activities on behalf of Prism.  *Id.* ¶ 8.  According to Bunnell, following the jury verdict, Netsch decided that the employees of Prism would begin to do business under the name of Intense Printing, a shell corporation Netsch had organized in 1992.  *Id.* ¶ 9.  After Bunnell complained that his ownership interest in Prism had evaporated, Netsch promised him that if he stayed on to manage sales for Intense, Netsch would give him 25% of the stock of Intense and its affiliates and make him an officer of Intense.  *Id.* ¶ 11.  Netsch confirmed the buy-out agreement would apply as well.  *Id.*

Bunnell agreed to act as an employee of Intense, managing virtually all of the sales of the print brokerage business of the company going forward. *Id.* ¶ 9.  Until 2011, Netsch provided Bunnell calculations of profits suggesting that the 25% stock transfer in Intense and its affiliates had occurred. *Id.* ¶ 14.  According to Bunnell, unbeknownst to him, Netsch never intended to give him any stock in Intense or any other affiliated companies and kept ownership of Intense to himself (50%); Attorney Daniel Schreimann (40%); and Vice President of Intense, Sandra Alley (10%). *Id.* ¶ 15.

After the judgment against Prism was entered on April 9, 2008, Prism filed for bankruptcy on April 24, 2008.  *Id.* ¶ 8.  Bunnell alleges that in 2010, after the bankruptcy trustee filed suit against Netsch, Bunnell and others, Bunnell learned for the first time that Netsch had in 2006 and 2007 transferred hundreds of thousands of dollars from Prism into Intense. *Id.* ¶ 12.  According to Bunnell, this was a fraud on Prism, its creditors, and him because at the time Intense was a shell corporation that did no business at all. *Id.*  Bunnell alleges that in the spring of 2011, he found out that Netsch had been lying about Bunnell's ownership of shares in Intense and the affiliated companies when he received a copy of a memo sent by Netsch to the Internal Revenue Service ("IRS"). *Id.* ¶ 18.  The memorandum stated that Bunnell had never owned any part of Intense or the affiliated companies. *Id.*  Bunnell also confirmed with the company's outside accountant that Netsch never filed the corporate records he had shown Bunnell making Bunnell an officer and shareholder. *Id.*

In 2011, Bunnell voluntarily terminated his employment with Intense.  *Id.* ¶ 19.  After resigning from Intense, he made a good faith demand upon Intense for just compensation for past commissions due and owed at the time based on the financial statements Netsch provided him.  *Id.*

¶ 21.  According to Bunnell, Netsch refused to go forward with the stock buy-back plan because: (1) Netsch now claimed he never personally agreed to buy back the shares, but rather that the companies would buy back the shares from Bunnell after loans were made by Netsch; and (2) Bunnell would not be entitled to any money for his shares or payment of his net profits due until he came up with "collateral" to deal with the liability in the Prism bankruptcy and IRS claims against Netsch and the affiliates.  *Id.* ¶ 22.

Bunnell alleges that Netsch maintained complete control of the finances of Prism and wrongfully transferred amounts between the bank accounts of Prism and other entities, and wrongfully transferred amounts to his family and himself.  *Id.* ¶ 7.  According to Bunnell, Netsch paid his wife and sons significant salaries for performing little or no work.  *Id.* ¶ 10.  Bunnell states that during the period from the jury verdict to the end of April 2008, Netsch informed him that he was going to make sure that there was no money in Prism to satisfy the Giddy Up judgment.  *Id.*  On information and belief, Bunnell contends that Netsch, or his sons, shredded Prism's files and transferred all the company assets to himself and the Netsch entities to avoid liability under the Giddy Up judgment.[2]  *Id.*  According to Bunnell, this also had the effect of defrauding him out of the $264,000, which had been retained by Netsch for the purchase of the phantom stock in Prism.  *Id.* ¶ 28b.  Bunnell alleges that as a result of Netsch's falsification of the business records of all of the companies which he owned and controlled, including Intense, as well as the fraudulent expense reports and "salaries" for his family, Bunnell believes that Netsch has purposely understated income that is due and owing to Bunnell since early 2009 from Intense and its affiliates.  *Id.* ¶ 20.  Bunnell

---

[2] Bunnell states that these alleged actions by Netsch are currently the subject of an adversary proceeding brought by the trustee against Netsch, *et al.*, which is set for trial in 2013.

asserts that because of his complete lack of sophistication in accounting and corporate finance, Netsch was able to systematically cheat him out of compensation he earned.  *Id.* ¶ 7.

## II.     Relevant Legal Standards

### A.     Standard for Federal Rule of Civil Procedure 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*  (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm*

*Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).   The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).   Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).   In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion.   *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.   *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).   While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted).   Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).   The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.   *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).   Stated another way, when a court deals with a Rule 12(b)(6) motion,

its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

A statute of limitations may support dismissal pursuant to Rule 12(b)(6) when it is evident from a plaintiff's pleadings that the action is time-barred and the pleadings fail to set forth or raise some basis for tolling the statute. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted).

**B.      Standard for Federal Rule of Civil Procedure Rule 9(b) - Pleading Fraud with Particularity**

In pleading a securities fraud violation, a plaintiff must satisfy the requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Rule 9(b) requires "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotation marks omitted). A dismissal for failure to satisfy the requirements of Rule 9(b) is a dismissal on the pleadings for failure to state a claim pursuant to Rule 12(b)(6). *U.S. ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999) (citing *Shushany v. Allwaste, Inc.,* 922 F.2d 517, 520 (5th Cir. 1993)).

**Memorandum Opinion and Order - Page 8**

A plaintiff pleading a securities fraud violation must also adequately allege scienter which, in relation to securities fraud, is "the intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 (1976); *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 546 n.3 (5th Cir. 2001); *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1490 (5th Cir. 1997). "To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Under *Tuchman*:

> The factual background adequate for an inference of fraudulent intent can be satisfied by alleging facts that show a defendant's motive to commit securities fraud. Where a defendant's motive is not apparent, a plaintiff may adequately plead scienter by identifying circumstances that indicate conscious behavior on the part of the defendant, though the strength of the circumstantial allegations must be correspondingly greater.

*Id.*

> Likewise, the Private Securities Litigation Reform Act ("PSLRA") requires that:

> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1)(B). In *Nathenson v. Zonagen Inc.*, 267 F.3d 400 (5th Cir. 2002), the Fifth Circuit stated:

> The effect of the PSLRA in this respect is to, *at a minimum*, incorporate the standard for pleading fraud under Federal Rule of Civil Procedure 9(b). This statutory language appears to comport with this Court's relatively strict interpretation of Rule 9(b), which requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.

*Id.* at 412 (citations and internal quotation marks omitted). Thus, to satisfy Rule 9(b) and the PSLRA, a plaintiff must plead facts and avoid reliance on conclusory allegations. *Tuchman*, 14 F.3d at 1067; *Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 915 (N.D. Tex. 1998).

When an allegation regarding an allegedly false or misleading statement is made on information and belief, the "the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). If a complaint fails to satisfy the pleading requirements of the PSLRA or Rule 9(b), the complaint must be dismissed. *ABC Arbitrage Pls.' Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002); *Nathenson*, 267 F.3d at 412-13.

## III.   Analysis

### A.   Securities Act and Exchange Act Claims

Defendants first seek dismissal of Plaintiff's claims for violations of the Securities Act and the Exchange Act. Defs.' Mot. to Dismiss 6; Defs.' Reply 3. Defendants note that Plaintiff does not cite to the specific provision of the Securities Act and Exchange Act that he alleges Defendants violated, or specifically state how Defendants violated the Act. *See* Defs.' Mot. to Dismiss 6. In response, the Complaint identifies a provision under the Exchange Act, but it still fails to cite to a provision under the Securities Act that Bunnell contends Defendants violated. It is not the court's duty, nor Defendants' obligation to determine whether Plaintiff has stated a claim for *every* possible violation of the Securities Act. As a general rule, this court frowns on the invocation of entire statutory codes in pleadings, as it does not provide the opposing side fair notice of the party's allegations and unnecessarily consumes scarce judicial resources, as the court is left with the task of determining which claims the plaintiff seeks to allege. It is not incumbent upon the court to guess or speculate as to the nature of the claim pleaded by Plaintiff; nor is the court to strain to find inferences favorable to him. *R2 Invs. LDC*, 401 F.3d at 642. Defendants pointed out this deficiency in Plaintiff's pleadings in the Motion to Dismiss and Reply, putting Plaintiff on notice of his failure to plead a specific provision under the Securities Act that Defendants allegedly violated. Plaintiff

had the opportunity to remedy this deficiency in the Complaint, but he failed to do so.  Although Plaintiff could have attempted to address this matter in the Complaint, the court will allow him one last opportunity to amend and correct this deficiency.  The court therefore will deny Defendants' request to dismiss Plaintiff's Securities Act claim.

1.     Nexus to Interstate Commerce

Defendants seek dismissal of Plaintiff's securities claims on the basis that the Acts apply only to sales of securities made in interstate commerce.  Because the court will allow Plaintiff to replead his Securities Act claim, the court will only address whether Plaintiff's Exchange Act claim alleges a sufficient connection to interstate commerce.  Plaintiff states in the Complaint that Defendants violated "section 78b(10b5)" of the Exchange Act.  Pl.'s Second Am. Orig. Compl. ¶ 31.  The court, however, believes Plaintiff intended to state that Defendants' actions constituted a violation of 15 U.S.C. § 78j(b), as § 78b sets forth reasons for the necessity of regulation of securities transactions.  Therefore, the court will construe Plaintiff's Exchange Act claim as a claim brought under 15 U.S.C. § 78j(b), which codifies section 10(b) of the Exchange Act.

Section 10(b) of the Exchange Act, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange

(b) To use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).   Rule 10b-5 implements section 10(b) of the Exchange Act and makes it unlawful for any person, directly or indirectly:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5(b).

Under section 10(b) of the Exchange Act, "[f]ederal jurisdiction depends on the 'use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange.'" *Woodward v. Metro Bank of Dallas et al.*, 522 F.2d 84, 93 n.19 (5th Cir. 1975) (quoting 15 U.S.C. § 78j). Purely *intrastate* use of the telephone and the mails is sufficient to confer federal jurisdiction in a private 10b-5 action. *See id.*; *Dupuy v. Dupuy*, 511 F.2d 641, 644 (5th Cir. 1975). "[I]t is beyond debate that the Internet and email are facilities or means of interstate commerce." *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009) (footnote omitted).

The court now turns to Plaintiff's allegations. In support of his claims under the Exchange Act, Plaintiff alleges that from 1998 to 2008, Netsch took $264,000 in performance bonuses from Bunnell's compensation purportedly to purchase phantom stock in Prism. Pl.'s Second Am. Orig. Compl. ¶ 28a.[3] Plaintiff also alleges that Netsch promised him in 2007, that if he would stay on to

---

[3] Stock is clearly a security covered by the Securities Act and the Exchange Act. *See* 15 U.S.C. §§ 77b(a)(1)), 78c(a)(10). It is less clear, however, that phantom stock is a "security" within the meaning of the Securities Act and Exchange Act. The court notes that Plaintiff did not attach a copy of the Phantom Stock Plan to his pleadings. As such, the court does not know how the specific terms and conditions of the phantom stock at issue in this case or how it is defined in the Phantom Stock Plan. In general, phantom stock has been defined as "[a] right . . . to receive an award with a value equal to the appreciation of a share of stock from the date the Phantom Stock is cashed out. . . . Phantom Stock programs are designed to provide executives with cash payments equivalent to amounts they could receive under an actual stock option or similar program. . . . Phantom programs are based on 'phantom' or 'hypothetical' shares or units." *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1327 (11th Cir. 1998) (quoting Coopers & Lybrand, *Executive Summary of Nonqualified Long term Incentive Plans*, CV01 ALI–ABA 619, 632 (1996)). Thus, phantom stock, is not actually "stock," and as Plaintiff concedes, he never owned anything in Prism. As Defendants do

manage sales for Intense, he would be given 25% of actual stock of Intense and its affiliated companies.  According to Plaintiff, in May 2011, after asking to cash out his stock interest withheld by Netsch, he learned for the first time that Netsch did not file the corporate documents transferring a 25% interest to Bunnell, and he was never given ownership interest in Intense and its affiliates. Plaintiff contends that Netsch never intended to part with actual ownership and control of the corporations.  Bunnell argues that his claims are cognizable under the Securities Act and Exchange Act because it is fraud in connection with the sale of a security.  Bunnell appears to suggest that this "sale" of securities occurred in interstate commerce because:

> Intense Printing and the other affiliates were engaged in inter-state [sic] commerce with the bulk of their business being done with Footlocker in New York, Avis in New Jersey, Adidas in Portland, and various companies which operate nationally and internationally such as Frito Lay Corporation, Blockbuster, and Wyandott Foods of Bradenton, Florida.

Pl.'s Second Am. Orig. Compl. ¶ 34.  Attached to Bunnell's pleadings are copies of e-mails he exchanged with Netsch concerning Bunnell's shares in the company and equity issues, including the buyout of Bunnell's shares by Intense.

Defendants, citing *Scaturro v. Seminole Casualty Insurance Co.*, 542 F. Supp. 2d 1290 (S.D. Fla. 2008), contend that because Bunnell does not allege that the transaction at issue occurred in interstate commerce or allege a public sale of securities on a national exchange, Bunnell has not sufficiently alleged a connection with interstate commerce.  Defs.' Mot. to Dismiss 6.  According to Defendants, Bunnell describes an isolated, private transaction that occurred wholly within the state

---

not challenge whether phantom stock is a security covered under the Acts, and Plaintiff does not appear to assert securities claims regarding the phantom stock purchased with the $264,000 in performance bonuses taken from his compensation, the court construes the Complaint to only allege securities claims regarding the 25% interest in the stock of Intense and its affiliates he alleges that Netsch promised him.

of Texas, and following *Scaturro*, the court should dismiss or order Bunnell to make a more definite statement of his claims.  *Id.*

The court determines that the Complaint has alleged a sufficient connection with interstate commerce with respect to Bunnell's Exchange Act claim.  Plaintiff alleges in his pleadings that "Netsch routinely sent emails and quarterly income statements to Bunnell showing his percentage of profits in Intense and the Affiliates."  Pl.'s Second Am. Orig. Compl. ¶ 28f.  Moreover, he has attached copies of e-mails between him and Netsch to his pleadings, and "Internet and email are facilities or means of interstate commerce," even if they were exchanged only in Texas.  *Barlow*, 568 F.3d at 220; *Dupuy* 511 F.2d at 644; *see also Hooper v. Mountain States Secs. Corp.*, 282 F.2d 195, 204-05 (5th Cir. 1960) (noting that with respect to a section 10(b) and Rule 10b-5 claim, "any use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in the execution of the fraudulent, deceitful scheme or in its consummation is sufficient").  Thus, the court will deny Defendants' request to dismiss Plaintiff's claim under the Exchange Act for failure to state a claim on the basis that Plaintiff fails to allege a sufficient connection to interstate commerce.

### 2.    Statutes of Limitations and Repose

Defendants also seek dismissal of Plaintiff's securities claims on the basis that most of the claims he could possibly raise under the Securities Act and Exchange Act are barred by the relevant statutes of limitations.  Because the court will allow Plaintiff to replead his Securities Act claim, the court will only address the statute of limitations and statute of repose applicable to Plaintiff's Exchange Act claim.

**Memorandum Opinion and Order - Page 14**

Until 2002, claims brought under section 10(b) of the Securities Act of 1934 and Rule 10b-5 were governed by a one-year statute of limitation and a three-year statute of repose. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991) ( "Litigation instituted pursuant to § 10(b) and Rule 10b-5 . . . must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation."). In 2002, Congress enacted the Sarbanes-Oxley Act, which extended the statute of limitation to two years and the statute of repose to five years. *See* 28 U.S.C. § 1658(b). As a result, section 10(b) and Rule 10b-5 claims must be filed within two years after discovery of the violation. *See id.* In any case, a securities claim under federal law must be filed no later than five years after the date of the alleged violation. *Id .* Unlike the limitations periods, which do not run until after the discovery of the facts constituting a violation, the repose period begins to run the moment the alleged violation occurs, regardless of the plaintiff's discovery. 28 U.S.C. § 1658; *see Lampf, Pleva, Lipkind, Prupis & Petigrow*, 501 U.S. at 363; *Topalian v. Ehrman*, 954 F.2d 1125, 1135 (5th Cir. 1992).

Bunnell alleges that in December 2007, Netsch promised him 25% of the stock in Intense and its affiliates. Pl.'s Second Am. Orig. Compl. ¶ 11. Bunnell alleges that he did not find out about his lack of ownership in Intense or its affiliates until spring of 2011. *Id.* ¶ 18. At the time this action commenced on September 14, 2012, it had not yet been five years since the alleged violation occurred and it had not been more than two years since Bunnell allegedly discovered the facts constituting the violation. Defendants argue that *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 130 S. Ct. 1784, 1796 (2010), requires reasonable diligence on behalf of plaintiff in order to rely on § 1658's discovery rule, and that Plaintiff, as a sales manager and officer of Intense, had the means, the opportunity, and the duty to know the inner workings of the companies. Defs.' Reply 4; Defs.'

Mot. to Dismiss 8.  According to Defendants, that Bunnell never saw Intense's financial records or tax returns "does not excuse the fact that [he] should have seen them."  *Id.*

In *Merck*, the Supreme Court held that "discovery" as used in § 1658(b) "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known."  130 S. Ct. at 1796.  Defendants argue that Plaintiff has failed to plead diligence and instead relies on "what appear to be excuses for lack of diligence."  Defs.' Reply 4.  Plaintiff states that he "is completely unsophisticated in terms of financial matters," "has never had any training or the ability to read or understand financial documents or accounting and has, in fact, never had a checkbook."  Pl.'s Resp. to Defs.' Mot. to Dismiss 3.  While these statements allege financial naïveté on his part as Defendants state, they do not speak to the issue of whether he exercised diligence.  Nonetheless, the court believes that Bunnell's allegations suggest that the hypothetical reasonably diligent plaintiff would have likely not discovered the facts before spring of 2011.

According to Bunnell's pleadings, from 2008 to 2011, Netsch made numerous oral and written promises to him and provided calculations of "profits" implying that the 25% stock transfer had occurred.  Pl.'s Second Am. Orig. Compl. ¶ 14. Bunnell alleges that these written documents made calculations of how much in "net profits of the company" he was to receive as a "shareholder." *Id.*  He further alleges that Netsch always kept control of the checkbook and financial records of Intense and its affiliated companies.  *Id.* ¶ 15.  Bunnell also states that Netsch "at one time showed Bunnell drafts of corporate resolutions making him an officer and shareholder in Intense and the Affiliates."  *Id.*  Additionally, Bunnell alleges that when Netsch was negotiating a deal to sell all shares of the companies to a company called Innerworkings, Netsch provided Bunnell with calculations showing what his ownership interest in the four companies would net him from the sale

of the stock to Innerworkings. *Id.* ¶ 16. According to Bunnell's pleadings, the offer, in the amount of $9 million, valued Bunnell's interest in the Prism group companies at $2,214,330. *Id.* Bunnell alleges that Netsch even represented to Innerworkings that Bunnell was a owner of the stock he was seeking to sell. *Id.* Bunnell alleges that he did not find out Netsch was lying about his ownership of shares in Intense and the affiliated companies until he received a copy of a memorandum sent by Netsch to the IRS. *Id.* ¶ 18. At that time, Bunnell confirmed with the company's outside accountant that Netsch told her he never intended to file the corporate records he had shown Bunnell making him an officer and shareholder. *Id.*

From Bunnell's allegations, the court determines that Bunnell acted as a reasonably diligent plaintiff would. Although Plaintiff did not independently verify whether he was made an officer or shareholder of Intense and its affiliates, in light of his allegations that Netsch *routinely* showed him accounting statements and corporate documents reflecting his 25% ownership and status as an officer in Intense, the court determines it would not be unreasonable for a plaintiff to assume that Netsch actually filed the corporate documents, or that the accounting statements reflected a real ownership interest in Intense and its affiliates. As soon as Plaintiff discovered that he did not own any shares in Intense after receiving a copy of the IRS memorandum, he took steps to discover the extent of the alleged fraud, such as calling the company's outside accountant. Thus, the court concludes that the Complaint alleges sufficient facts to suggest that Bunnell exercised reasonable diligence in discovery Defendants' alleged fraud.

Therefore, the court determines that Plaintiff's Exchange Act claim regarding his 25% interest in Intense and its affiliates is not barred by the statute of limitations. Accordingly, the court

will deny Defendants' request to dismiss Plaintiff's Exchange Act claim on the basis that it is barred by the statute of limitations.

###    B.    Breach of Contract Claim

Bunnell alleges in his pleadings that, irrespective of stock ownership in Intense and its affiliates, he was promised as a performance bonus 25% of the net profits on jobs that he originated or managed from approximately December 2007 to date and seeks damages for breach of this contract. Pl.'s Second Am. Orig. Compl. ¶ 37. Defendants seek dismissal of Bunnell's breach of contract claim on the basis that it is barred by the statute of limitations.

"A party asserting a breach of contract claim must sue no later than four years after the day the claim accrues. It is well-settled law that a breach of contract claim accrues when the contract is breached." *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (citing Tex. Civ. Prac. & Rem.Code § 16.051 and *Smith v. Fairbanks, Morse & Co.*, 102 S.W. 908, 909 (1907)).

In Bunnell's response to Defendants' Motion to Dismiss, he states:

> With respect to the breach of contract, Bunnell is claiming that he was wrongfully denied sales commissions that were due and owing at the end of calendar years 2008, 2009, 2010 and the first six months of 2011. Assuming a four-year statute of limitations applies, there is no limitations which would in any case be triggered with respect to those claims.

Pl.'s Resp. to Defs.' Mot. to Dismiss 6. Defendants argue that because he seeks to recover performance bonuses based on an agreement he claims to have entered in 2007, his claim is barred by the statute of limitations. The court notes, however, that a breach of contract claim accrues from the dated the contract was *breached*, not necessarily the date the contract was *entered*. Plaintiff, in his response, states that the sales commissions he was wrongfully denied were due to him at the end of calendar years 2008, 2009, 2010 and the first six months of 2011. *Id.* In his pleadings, however,

he states that the payments would have been due and payable in the spring of 2009, 2010, and 2011. Second Am. Orig. Compl. ¶ 37.   If the contract was entered into in 2007, and, according to its terms, the first payment was not due until the end of the 2008 calendar year or the spring of 2009, and Netsch failed to make this payment, then Plaintiff's breach of contract claim did not accrue until, at the earliest, the end of the 2008 calendar year, or at the latest, the spring of 2009.   Thus, Plaintiff's breach of contract claim would not be barred by the statute of limitations, as it would not have expired at the until either the end of the 2012 calendar year or the spring of 2013.   Therefore, the court denies Defendants' request to dismiss Plaintiff's breach of contract claim on the basis that it is barred by the statute of limitations.   Because the court cannot conclusively determine between Plaintiff's pleadings and response, however, when his breach of contract claim accrued, as Plaintiff states the payments were due at two different times, the court will order Plaintiff to replead this claim with more specificity so that it can conclusively determine when Plaintiff's breach of contract claim accrued.

### C.      Common Law Fraud Claim

Bunnell further alleges that, in addition to Netsch's promises that Bunnell would receive 25% of the stock of Intense and that he would be made an officer, Netsch fraudulently induced Bunnell to work for Intense by promising that Bunnell would receive 25% of the net profits on business he managed while at Intense following Prism's bankruptcy.   Pl.'s Second Am. Orig. Compl. ¶ 42. According to Bunnell, Netsch continued to embellish the fraudulent representations by showing him documents making Bunnell an officer and shareholder that Netsch promised had been executed and filed.   *Id.*   Bunnell states that he worked at Intense from 2007 to 2011 in reliance upon the material promises of Netsch.   *Id.*   Defendant seeks dismissal of Bunnell's common law fraud claim on the

basis that it is barred by the statute of limitations.  Defs.' Reply 5.  Furthermore, Defendants seek dismissal of Plaintiff's fraud claim on the basis that he has failed to plead fraud sufficiently.  *Id.*

      1.    <u>Statute of Limitations</u>

"Under Texas law, '[a] fraud cause of action requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010) (*citing  Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).  Fraud is subject to a four-year statute of limitations.  *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011) (citing Tex. Civ. Prac. & Rem. Code § 16.004).  "The statute of limitations for fraud begins to run from the time the party knew of the misrepresentation." *Id.* (citing *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997) ( "[T]he statute of limitations does not begin to run until the claimant knew or should have known of facts that in the exercise of reasonable diligence would have led to the discovery of the wrongful act.")).

Because the court has already determined that Bunnell did not know of Netsch's alleged misrepresentations until the spring of 2011 and acted as a reasonably diligent plaintiff would, the court determines that for purposes of this motion to dismiss, the four-year statute of limitations did not begin to run until the spring 2011.  The four-year statute of limitations had not yet expired when Netsch initiated this action in September 2012.  Accordingly, the court denies Defendants' request to dismiss Bunnell's common law fraud claim on the basis that it is barred by the statute of limitations.

2.      Pleading Fraud with Particularity

Defendants assert that nowhere in the Complaint does Bunnell allege facts that would support his conclusory allegation, even by inference, that Netsch knew that he would perform the alleged promises when they were made.  In support, Defendants cite to *Airborne Freight Corp. v. C.R. Lee Enterprises, Inc.*, 847 S.W.2d 289, 294 (Tex. App.   El Paso 1992, writ denied), for the proposition that "[f]ailure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made."  Defs.' Reply 5.  The court in *Airborne Freight* goes on to state that failure to perform is just "a circumstance to be considered *with other facts* to establish intent."  847 S.W.2d at 294 (emphasis added).  The court notes that Plaintiff has not fully had the chance to develop all of the facts relating to what Netsch knew at the time he made statements to Plaintiff, as the case is just at the pleadings stage.

The Complaint alleges that Defendant Netsch's actions to defraud Bunnell were "knowing, intentional and calculated to damage Bunnell;" that Netsch made "outright fraudulent promises" to Bunnell and "had been lying all along about the ownership of shares in Intense and the affiliated companies.  Pl.'s Second Am. Orig. Compl. ¶¶ 18, 28, 31.  Factual allegations that support the inference that Netsch knew of the falsity of his statements at the time he made them, include Bunnell's allegations that: (1) Netsch routinely sent e-mails and quarterly income statements to Bunnell showing is percentage of profits in Intense and the affiliates; (2) Netsch showed Bunnell corporate documents making him President of Intense; (3) Netsch always kept control of the financial records of Intense and its affiliated companies; (4) "Netsch never allowed Bunnell to access the books and financial records of Intense;" (5) Netsch sent a memo to the IRS stating that Bunnell had never owned any part of Intense or the affiliated companies; and (6) the company's outside

accountant told Bunnell that "Netsch told her he never intended to file the corporate records he had shown Bunnell making Bunnell an officer and a shareholder." *Id.* ¶¶ 13, 15, 18, 28f, 32c.  These allegations coupled with the allegation that Netsch failed to perform his promises give rise to a reasonable inference that Netsch knew of the falsity of his statements at the time he made them to Bunnell.

Thus, the court determines that Plaintiff has pleaded fraud with sufficient particularity and alleged sufficient facts to infer that Defendant Netsch made statements to him knowing of their falsity or at least made them with recklessly without any knowledge of their truth.  Accordingly, the court will deny Defendants' request to dismiss this claim on this basis.

## IV.  Conclusion

For the reasons herein stated, the court concludes that Plaintiff has failed to state a claim for a violation under the Securities Act; however, rather than dismiss this claim, the court allows Plaintiff one last chance to amend.  The court therefore **denies without prejudice** Defendants' Motion to Dismiss.  For the reasons herein stated, Plaintiff must replead the allegations of his: (1) Securities Act claim; and (2) breach of contract claim with the required specificity in accordance with the standards and applicable law as set forth in this opinion.  This means that he must allege sufficient facts based on the elements of *each* claim so that the court may reasonably infer that Defendants, based on the allegations pleaded if proved to be true, are liable for the conduct set forth in the pleading.  Plaintiff must file his amended pleading **by June 25, 2013.**  Failure of Plaintiff to replead by this date in accordance with the standards herein set forth and the court's instructions will entitle Defendants, upon proper motion, to dismissal pursuant to Rule 12(b)(6) of the claims ordered

to be repleaded; or the court may dismiss them *sua sponte* pursuant to Rule 41(b) of the Federal

Rules of Civil Procedure for want of prosecution or failure to comply with a court order.

**It is so ordered** this 11th day of June, 2013.


Sam A. Lindsay
United States District Judge


**Memorandum Opinion and Order - Page 23**